Caleb Hatch, Utah State Bar No. 17016
**LEE & HAYES, P.C.**
601 West Riverside Avenue, Suite 1400
Spokane, WA 99201
Telephone: (509) 324-9256
Facsimile: (509) 323-8979
Caleb.Hatch@leehayes.com

Richard Uberto (*pro hac vice* to be filed)
**LEE & HAYES, P.C.**
75 14th Street NE, Suite 2500
Atlanta, GA 30309
Telephone: (404) 815-1900
Richard.Uberto@leehayes.com

Seth R. Ogden (*pro hac vice* to be filed)
**PATTERSON INTELLECTUAL PROPERTY LAW, P.C.**
1600 Division Street, Suite 500
Nashville, TN 37203
Telephone: (615) 242-2400
Facsimile: (615) 242-2221
sro@iplawgroup.com

*Attorneys for Plaintiff BTL Industries, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **BTL INDUSTRIES, INC.,** | **COMPLAINT** |
| Plaintiff, | |
| v. | **JURY DEMANDED** |
| **QUADCORE CORP. d/b/a Layton Weight Loss Clinic, BEATRIZ POTENZA, and ROBERTO POTENZA.** | **Case No. _____** |
| Defendants. | **U.S. District Judge** |

Plaintiff BTL Industries, Inc. ("**Plaintiff**" or "**BTL**"), by and through its undersigned counsel, bring this action against Defendants Quadcore Corp., d/b/a Layton Weight Loss Clinic ("**Layton**"), Beatriz Potenza, and Roberto Potenza (collectively, "**Defendants**"), on information and belief, and alleges as follows:

## NATURE OF THIS ACTION

1.     This is a civil action by BTL arising out of Defendants' patent infringement in violation of the patent laws of the United States, 35 U.S.C. § 1 *et seq.*; Defendants' trademark infringement, unfair competition, false designation of origin, and false advertising under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a); Defendants' trademark infringement and unfair competition under the Utah Unfair Competition Act, Utah Code Ann. § 13-5(a)-101 *et seq*., and the common law of the State of Utah.

2.     BTL and its affiliates pioneered the application of high-intensity, focused electromagnetic technology in non-invasive aesthetic body-contouring devices. In June 2018, BTL launched the ground-breaking EMSCULPT® aesthetic body-contouring device that uses this technology in the United States, after the device was cleared by the U.S. Food and Drug Administration (FDA). BTL and its affiliates protected the EMSCULPT® device—and the technology used in the device—with numerous patents and federally registered trademarks and copyrights.

3.     Defendants promote and sell services in the United States using certain body-contouring devices that they call "EMShape NEO." On information and belief, Defendants have and continue to infringe BTL's patents directed to body-contouring devices and methods by offering, selling, and performing body-contouring services using these devices. On information

and belief, Defendants advertise these body-contouring services by improperly using BTL's trademarks, and confusingly similar variations of these trademarks, in their promotional and informational materials for these body-contouring services.

4.    Defendants' infringing and fraudulent conduct not only irreparably harms BTL and the goodwill associated with its brand but may also pose potentially serious health and safety consequences to the public as, on information and belief, Defendants' device is not FDA cleared. Defendants' use of EMSCULPT®, EMSCULPT NEO®, NEO®, and HIFEM®, and the confusingly similar EMSHAPE and EMSPHAPE NEO are confusingly similar to BTL's EMSCULPT®, EMSCULPT NEO®, NEO®, and EM® marks, which mislead consumers into believing that Defendants' devices and body-contouring services are associated and/or otherwise affiliated with BTL.

5.    BTL is thus forced to file this action to combat Defendants' unauthorized use of its patents and federally registered trademarks, as well as to protect unknowing consumers from purchasing body-contouring services performed by devices that are not FDA cleared.

6.    Defendants willful and continuing trademark infringement, unfair competition, and patent infringement should be enjoined permanently to curb the harm to BTL's reputation and the relevant segment of the public at large. BTL has been, and continues to be, irreparably damaged as a result of Defendants' willful actions and seeks injunctive and monetary relief.

## **PARTIES**

7.    BTL is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 362 Elm Street, Marlborough, Massachusetts 01752.

8.      On information and belief, Quadcore Corp. is a corporation organized and existing under the laws of the State of Utah, with its registered physical address as 223 Ranch Road, Farmington, UT, 84025. On information and belief, Quadcore Corp. is doing business as Layton Weight Loss Clinic with its registered physical address at 1785 E 1450, Suite #140, Clearfield, UT, 84015, and its principal place of business 1725 Legend Hills Drive, Suite 310, 3rd Floor, Clearfield, UT 84015.

9.      On information and belief, Beatriz Potenza is an individual and director, principal, and/or owner of Layton, who resides in this District.

10.     On information and belief, Roberto Potenza is an individual and director, principal, and/or owner of Layton, who resides in this District.

## JURISDICTION AND VENUE

11.     This Court has subject-matter jurisdiction over BTL's claims arising under the patent laws of the United States, 35 U.S.C. § 100, *et seq.* and the Lanham Act, 15 U.S.C. §§ 1051, 1121, pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a)–(b).

12.     Subject-matter jurisdiction for the trademark and unfair competition claims exists with respect to the claims asserted in this Complaint pursuant to 28 U.S.C. §§ 1331 and 1338.

13.     This Court has personal jurisdiction over Defendants because they or their employees have committed acts of patent infringement under 35 U.S.C. § 271(a), (b), or (c), and are subject to this Court's jurisdiction under 28 U.S.C. § 1400(b).

14.     This Court has personal jurisdiction over Layton because, on information and belief, it is a Utah corporation and has its principal place of business in this District.

15.     This Court has personal jurisdiction over Defendant Beatriz Potenza because, on information and belief, Ms. Potenza is an owner and moving, conscious force behind Defendant Layton actions and is a resident of this District.

16.     This Court has personal jurisdiction over Defendant Roberto Potenza because, on information and belief, Mr. Potenza is an owner and moving, conscious force behind Defendant Layton actions and is a resident of this District.

17.     This Court has supplemental jurisdiction over BTL's claims arising under the laws of Utah, pursuant to 28 U.S.C. § 1367(a), because BTL's state-law claims are so related to BTL's federal law claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

18.     Further, the acts complained of herein occurred in Utah.

19.     Similarly, the exercise of personal jurisdiction over Defendants comports with the due process requirements of the United States Constitution because:

    (a)     Defendants have purposefully established "minimum contacts" with the State of Utah and this District; and

    (b)     the exercise of personal jurisdiction over Defendants will not offend the traditional notions of fair play and substantial justice.

20.     Therefore, this Court has specific and general jurisdiction over Defendants.

21.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 at least because Defendants are residents of and have their principal place of business in this District and are subject to personal jurisdiction in this District.

## BACKGROUND

22.     BTL specializes in the innovation, development, and sale of equipment and treatments for the aesthetics industry in the United States. BTL and its affiliates developed proprietary technology that uses high-intensity electromagnetic stimulation to tone and strengthen muscles in targeted areas. BTL applied its technology to develop a series of new and innovative FDA-cleared devices and developed protocols for using the technology for aesthetic therapies. BTL denotes its products and services that feature this technology with its HIFEM® brand and other trademarks.

23.     The first such device that BTL developed was the EMSCULPT® device, a standalone, non-invasive, FDA-cleared, body-contouring device. *See* **Exhibit A** (BTL Press Release). BTL's patent-protected EMSCULPT® device uses high-intensity electromagnetic energy to induce powerful muscle contractions in a patient. BTL has developed specifically configured EMSCULPT® applicators, tailoring each type of applicator to a specific target area.



24.     The EMSCULPT® device uses innovative and patent-protected protocols for aesthetic therapies. BTL's proprietary protocols create repetitive muscle contractions that result in a non-invasive method of toning muscle and body sculpting. *See* https://bodybybtl.com/solutions/emsculpt-neo/.

25.     In June 2018, BTL received clearance from the FDA for its EMSCULPT® device with large applicators and began to sell the device in the United States for the improvement of abdominal tone, strengthening of the abdominal muscles, development of a firmer abdomen, and for strengthening, toning, and firming of the buttocks and thighs. *See id.* In October 2018, BTL received FDA clearance for an additional indication for the improvement of muscle tone and

firmness and for strengthening muscles in arms. *Id.* In July 2019, BTL received FDA clearance for the EMSCULPT® device with both large and small applicators for the improvement of abdominal tone, strengthening of the abdominal muscles, development of a firmer abdomen, strengthening, toning, and firming of the buttocks, thighs, and calves, as well as improvement of muscle tone and firmness for strengthening muscles in arms. *Id.* The smaller applicators are intended for smaller treatment areas.

26.    BTL markets and distributes its non-invasive aesthetic body-contouring EMSCULPT® device to healthcare professionals, and BTL licenses these healthcare professionals to provide the associated treatment services administered via authentic EMSCULPT® devices that incorporate its proprietary technology, muscle toning protocols, and applicators in the United States.

27.    BTL's EMSCULPT® device created a new market in which it quickly became the innovative industry leader. Before BTL launched the EMSCULPT® device in 2018, no other product used high-intensity, focused, electromagnetic technology to tone and firm muscle for non-invasive, aesthetic body contouring.

28.    The aesthetic industry has recognized BTL's innovation, hailing it has having taken "the aesthetics industry by storm;" praising BTL as being the first to apply high-intensity, focused, electromagnetic energy technology for aesthetics; and lauding the EMSCULPT® device as having "transformed treatment protocols." **Exhibit A**.

29.    BTL's EMSCULPT NEO® device is FDA-cleared and uses high-intensity, electromagnetic energy to induce powerful muscle contractions—unachievable through typical voluntary contractions—to contour an individual's physique. The EMSCULPT NEO® device is

currently cleared by the FDA as a non-invasive treatment for the abdomen, buttocks, arms, calves, and thighs. BTL markets and distributes its EMSCULPT NEO® device to healthcare professionals.

30.     The EMSCULPT NEO® device has been a breakthrough development in the aesthetics industry, receiving plaudits from some of the industry's largest companies. For example, the EMSCULPT NEO® device won Dermascope.com's Aesthetician's Choice Award in 2022 and Glamour magazine described the device as "revolutionary." *See* **Exhibit B** (Dermascope and Glamour Awards).

31.     BTL's market success and superior performance are by-products of its technological innovations over the past several decades. BTL continues to implement these innovations today. BTL has protected its investment into its innovations and its brand with patents and trademarks. BTL lists the patents that cover its products, including EMSCULPT® and EMSCULPT NEO®, on its website at www.btlnet.com/patents.

A. <u>**THE ASSERTED PATENTS**</u>

32.     On May 2, 2017, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued U.S. Patent No. 9,636,519 (the "**'519 Patent**"), titled "Magnetic Stimulation Methods and Devices for Therapeutic Treatments" to BTL Holdings Limited. A true and correct copy of the '519 Patent is attached hereto as **Exhibit C**. The '519 Patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringements of the '519 Patent, including equitable relief and damages.

33.     On November 19, 2019, the USPTO duly and lawfully issued U.S. Patent No. 10,478,634 (the "**'634 Patent**"), titled "Aesthetic Method of Biological Structure Treatment by Magnetic Field" to BTL Medical Technologies S.R.O. A true and correct copy of the '634 Patent

is attached hereto as **Exhibit D**. The '634 Patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringements of the '634 Patent, including equitable relief and damages.

### B. BTL'S TRADEMARKS

34.    BTL uses and licenses registered and unregistered trademarks and trade dress to market its aesthetic equipment and treatments in the United States including the following federally registered marks (the "BTL Trademarks"):

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| 5,688,619 | **HIFEM** | Mar. 5, 2019 | Sept. 19, 2017 | Class 10: Medical and aesthetic apparatus and instruments generating electromagnetic, magnetic, electrical, mechanical, radiofrequency or thermal energy for use in skin treatment procedures; medical apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, treatment of pigmentation spots, increase in muscle volume, increase in number of muscle fibres and increase in muscle tonus; medical apparatus and instruments for the treatment of cellulite; therapeutic facial masks; facial toning machines for cosmetic use; electric |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | stimulation and magnetic stimulation apparatus for physical therapy purposes for the treatment of nerve and muscle pain and elimination of muscular spasms; gynecological and urological apparatus and instruments, namely for genital rejuvenation, treatment sexual dysfunction, gynecological treatment and pelvic floor treatment.<br><br>Class 44: Medical services; medical equipment rental; cosmetic and plastic surgery; beauty salons; liposuction services; medical removal of body cellulite. |
| 5,572,801 | **EMSCULPT** | Oct. 2, 2018 | Sept. 29, 2017 | Class 10: Medical apparatus and instruments for the treatment of cellulite; medical apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, and treatment of pigmentation spots; above medical apparatuses with exception for the treatment of the nasopharynxs including inhalers and nasal irrigators; massage apparatus; medical apparatus and instruments for |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | aesthetic skin treatment procedures; medical apparatus generating electromagnetic, magnetic, electrical, mechanical or thermal energy for use in skin treatment procedures; medical apparatus particularly apparatus for pain management, elimination of muscle spasms; gynaecological and urological apparatus and instruments, namely, for genital rejuvenation, treatment sexual dysfunction, gynecological treatment and pelvic floor treatment |
| 6,069,279 | **EMSCULPT** | June 2, 2020 | Sept. 29, 2017 | Class 44: medical services; gynecology services; medical equipment rental; cosmetic and plastic surgery; beauty salons; liposuction services; removal of body cellulite |
| 5,915,636 | **EM** | Nov. 19, 2019 | Jan. 8, 2019 | Class 10: Physical therapy devices for treating muscle spasms and pain management; medical apparatus and instruments, in particular apparatus and instruments for the treatment of cellulite, apparatus and instruments for body toning and body shaping, and apparatus and instruments for the removal of fat, circumference reduction; medical devices for use in treating gynecological disorders, pelvic area disorders, bladder disorders and incontinence. |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | Class 44: Health assessment services; medical services, namely, providing treatment for patients with gynecological disorders, pelvic area disorders, bladder disorders and incontinence; gynecological services; urology medical care services; rental of medical apparatus and equipment; cosmetic and plastic surgery; beauty salon services; liposuction and surgical body shaping services; medical services, namely, removal of body cellulite; physical therapy services. |
| 6,206,098 | **EM** | Nov. 24, 2020 | July 2018 | Class 10: Physical therapy devices for treating muscle spasms and pain management; medical apparatus and instruments, in particular apparatus and instruments for the treatment of cellulite, apparatus and instruments for body toning and body shaping, and apparatus and instruments for the removal of fat, circumference reduction; medical devices for use in treating gynecological disorders, pelvic area disorders, bladder disorders and incontinence.<br><br>Class 44: Health assessment services; medical services, namely, providing treatment for patients with gynecological disorders, pelvic area |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | disorders, bladder disorders and incontinence; gynecological services; urology medical care services; rental of medical apparatus and equipment; cosmetic and plastic surgery; beauty salon services; liposuction and surgical body shaping services; medical services, namely, removal of body cellulite; physical therapy services. |
| 6,373,947 | **EMSCULPT NEO** | June 1, 2021 | Oct. 17, 2020 | Class 10: Medical apparatus and instruments for the treatment of cellulite; medical apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, and treatment of pigmentation spots; medical apparatus and instruments for aesthetic skin treatment procedures; medical apparatus generating electromagnetic, magnetic, electrical, mechanical or thermal energy for use in skin treatment procedures; medical apparatus particularly apparatus for pain management, elimination of muscle spasms; gynecological and urological apparatus and instruments, namely, for genital rejuvenation, treatment |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | of sexual dysfunction, gynecological treatment and pelvic floor treatment.<br><br>Class 44: Medical services; medical equipment rental; cosmetic and plastic surgery; beauty salons; liposuction services; medical services, namely, removal of body cellulite. |
| 7,310,624 | **NEO** | Feb. 20, 2024 | Nov. 2023 | Class 10: Medical apparatus and instruments for esthetic purposes causing muscle contraction and heating of tissue for muscle building and lipolysis<br><br>Class 44: Medical services provided by medical apparatus and instruments for esthetic purposes causing muscle contraction and heating of tissue for muscle building and lipolysis |
| 4,750,101[1] |  | June 9, 2015 | Jan. 24, 2014 | Class 10: Physiotherapy apparatus in the nature of apparatus for electrotherapy, laser therapy, ultrasound therapy, magnetotherapy, and shockwave therapy, all for electrical nerve and muscle stimulation, infrared heat, wound healing, pain therapy, and treatment of inflammation; body rehabilitation apparatus for medical purposes; esthetic |

---

[1] This registration hereinafter referred to as the "BTL Logo."

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | massage apparatus; hydrotherapy massage apparatus; medical and veterinary diagnostic apparatus and instruments, namely, electrocardiographs, heart monitors, spirometers, and blood pressure monitors; Medical devices for nonsurgical cosmetic treatments; medical devices for body toning and body shaping, tightening of skin, treatment of skin laxity, wrinkles, rhytides, and cellulite, and fat removal; lymphatic drainage equipment, namely, massage apparatus and lasers for medical use |

35.     BTL has continuously and exclusively used the BTL Trademarks and has never abandoned them. The BTL Trademarks are validly registered in the United States and are in full force and effect. True and correct copies of the BTL Trademark registrations, obtained from the Trademark Status Document Retrieval ("**TSDR**") database of the USPTO, are attached to this Complaint as **Exhibit E**. These registrations constitute *prima facie* evidence of validity of the BTL Trademarks and of BTL's exclusive right to use the BTL Trademarks under 15 U.S.C. § 1057(b).

36.     The BTL Trademarks therefore perform an important source-identifying function for BTL's aesthetic body-contouring devices like the EMSCULPT®, and associated treatment services. The BTL Trademarks signify to purchasers that the body-contouring devices come from BTL, and the body-contouring services are rendered by BTL's devices and administered by BTL-

trained and BTL-authorized service providers. The BTL Trademarks are inherently distinctive and are associated with BTL's innovative aesthetic body-contouring devices that have acquired considerable brand loyalty through BTL's sales and promotion, and direct word-of-mouth promotion by consumers. In addition, BTL has expended significant time, money, and resources in developing, marketing, advertising, promoting, and selling its products and services under its trademarks, including the BTL Trademarks, in the United States. The market reputation and consumer goodwill associated with the BTL Trademarks are of significant value to BTL.

## C. **DEFENDANTS' UNLAWFUL CONDUCT**

37.    On information and belief, Defendants have since at least May 22, 2025, advertised body-contouring devices, such as the "EMShape Neo" (the "**Accused Device(s)**").

38.    On information and belief, Defendants' activities are ongoing, despite attorneys for BTL informing Defendants that their activities violate BTL's rights.

39.    On information and belief, the Accused Device(s) implement the same or substantially the same technology as the Asserted Patents.

40.    On information and belief, the Accused Device(s) include or perform each and every limitation of at least one claim of the Asserted Patents, either literally or under the doctrine of equivalents. By offering services using, making, offering to sell, selling, and/or importing into the United States the Accused Device(s), Defendants have directly infringed, and continue to directly infringe, literally or under the doctrine of equivalents, one or more claims of the Asserted Patents under 35 U.S.C. § 271(a).

41.    On information and belief, Defendants have been aware of the Asserted Patents since at least May 22, 2025, when attorneys for BTL informed Defendants, via email to

sophia@laytonweightloss.com (i.e., the email listed on Layton's website) and FedEx to Layton's principal address (1785 E. 1450, Suite #140, Clearfield, UT, 84015) and the address of Layton's registered agent, Roberto Potenza (223 Ranch Rd. Farmington, UT, 84025), of their infringement of the Asserted Patents. FedEx provided proof of delivery on May 27, 2025, at Defendants' principal address and registered agent's address. Defendants responded on May 29, 2025, and the Parties corresponded but were unable to reach a mutually agreeable resolution. True and correct copies of the Parties' communications are attached to this Complaint as **Exhibit F**.

42.     Additionally, BTL's "Patent Labeling" webpage (https://www.btlnet.com/patents) also lists the Asserted Patents and identifies them as covering the EMSCULPT®, and EMSCULPT NEO® devices.

43.     On information and belief, Defendants have been aware of BTL's specific infringement allegations regarding the Asserted Patents since at least when BTL served a copy of the complaint in this matter.

44.     On information and belief, Defendants actively encourage, promote, distribute, provide instruction for, and support the use of the Accused Device(s) by their customers in manner that directly infringes, either literally or under the doctrine of equivalents, one or more claims of the Asserted Patents under 35 U.S.C. § 271(b), knowing and intending that Defendants' customers will commit acts in such a manner as to directly infringe the Asserted Patents.

45.     Defendants have used and continue to use the same or confusingly similar variations of the BTL Trademarks in their informational and promotional materials for their body-contouring services and sale of Accused Device(s).

46.    Specifically, the images below are representative of Defendants' infringing conduct:







([https://bodysculptinglayton.com/](https://bodysculptinglayton.com/); accessed July 8, 2025)



([https://www.instagram.com/p/DHeWtuyvHrX/](https://www.instagram.com/p/DHeWtuyvHrX/); accessed July 8, 2025)

47.    On information and belief, Ms. Potenza and Mr. Potenza are the moving, conscious, and active forces behind Layton's infringing conduct. For example, on information and belief, Ms. Potenza and Mr. Potenza are the owners and/or directors of Layton. For example, Ms. Potenza's LinkedIn lists her as the "Founder and CEO at Layton Weight Loss Clinic." *See*

https://www.linkedin.com/in/beatriz-potenza-0894377/; *see also* **Exhibit G** (Utah Secretary of State Business Registrations listing Beatriz Potenza and Roberto Potenza).

48.     Ms. Potenza and Mr. Potenza, as the owners and directors of Layton, are and have been the individuals possessing decision-making authority over the content of Layton's technical, information, and promotional materials for the Accused Device(s).

49.     On information and belief, Ms. Potenza and Mr. Potenza have and continue to willfully and maliciously serve as the moving, conscious, and active forces behind Layton's infringing conduct—not least because Ms. Potenza and Mr. Potenza have had constructive knowledge of BTL's intellectual property at least since May 22, 2025, when counsel for BTL informed Defendants via email and FedEx of their potential infringement of BTL's intellectual property.

50.     Defendants' use of EMSHAPE, EMSHAPE NEO, EMSCULPT®, EMSCULPT NEO®, NEO®, and HIFEM® is without BTL's authorization.

51.     On information and belief, the Accused Device(s) is not an authentic BTL device. On information and belief, Defendants' Accused Device(s) uses time-varying magnetic fields that are applied to a patient's skin and held there using a flexible belt attached to an applicator that includes a magnetic field generating coil. On information and belief, the magnetic field generating coil generates a time-varying magnetic field and the device applies a magnetic flux of 50 T cm$^2$ to 1,500 T cm$^2$ and causes muscle contractions.

52.     On information and belief, the Accused Device(s) is not an authentic BTL device. On information and belief, Defendants' Accused Device(s) uses time-varying magnetic fields for treatment of a patient. On information and belief, the device includes a connection to an energy

source, a switch, a coil, an energy storage device, a casing, and at least one blower. On information and belief, at least one blower is mounted around the circumference of the coil so that air is forced through a flow channel defined between the coil and the interior surface of the casing. This arrangement allows fluid (e.g., air) to pass over both the upper and lower faces of the coil, thereby cooling the coil while the magnetic field is being pulsed.

53.    On information and belief, the Accused Device(s) are not FDA-cleared.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 9,636,519

54.    BTL repeats and re-alleges each and every allegation above as if fully set forth herein.

55.    The '519 Patent is directed towards a magnetic stimulation device for producing a time varying magnetic field for treatment. Exemplary claim 1 of the '519 Patent recites:

A magnetic stimulation device producing a time varying magnetic field for treatment, comprising;

a connection to an energy source, a switch, a coil, an energy storage device, at least one blower and a case;

with the blower arranged on a circumference of the coil; and

wherein the coil and the casing are arranged in a manner that fluid can flow in-between them and wherein the coil is cooled by fluid flow over at least upper and lower sides of the coil.

56.    Defendants have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, at least claim 1 of the '519 Patent by making, using, offering to sell, selling, or importing the Accused Device(s) in the United States.

57.    On information and belief, Defendants have and continue to promote and perform the preamble of claim 1 of the '519 Patent, which recites "[a] magnetic stimulation device producing a time varying magnetic field for treatment, comprising." Advertising and promotional information for the Accused Device(s) indicates that the body-contouring services performed by the Accused Device(s) tone a patient's muscles using time-varying magnetic fields. For example, in the below screenshots taken from Defendants' Website, the Accused Device(s) delivers "High-Intensity Muscle Toning" to "Sculpt Your Dream Abs." Furthermore, the device "targets fat and enhances muscle definition" by utilizing "20,000 contractions per session."



## WHO IS A CANDIDATE FOR BODY SCULPTING?



- **BMI UP TO 35**

This treatment is effective for patients with a BMI of up to 35, making it suitable for a wider range of individuals.

- **FAT LOSS, MUSCLE TONE & TIGHTER SKIN**

It targets fat and enhances muscle definition, even helping lean patients achieve six-pack abs.

- **AFFORDABLE ALTERNATIVE TO EMSCULPT NEO**

EmShape NEO offers comparable or better results at a lower cost than the pricey EMSCULPT NEO.

- **NO RECOVERY TIME**

Quick, comfortable sessions with no downtime—patients can resume normal activities immediately.

- **MAINTENANCE WITH HEALTHY LIFESTYLE**

Results are best maintained with a healthy lifestyle; a 30-minute maintenance session every 1-6 months is recommended.

- **CONTRAINDICATIONS**

Not suitable for those with metal implants, tattoos at the treatment site, certain medical conditions, or during pregnancy.

---

✅ **Effortless Muscle Sculpting**

Experience 20,000 contractions per session—beyond what any workout can achieve.

✅ **Targeted Fat Reduction**

Say goodbye to stubborn belly fat while toning your core.

✅ **FDA-Approved & Backed by Science**

Enjoy zero downtime, zero pain, and proven results.

✅ **Designed for Busy Schedules**

No sweat required! Relax while the machine does the sculpting for you.

✅ **Cutting edger technology**

HICMMT delivers 60% stronger magnetic energy than HIFEM, enhancing muscle contractions and sculpting efficiency



(https://bodysculptinglayton.com/; accessed July 8, 2025)

58.    On information and belief, the Accused Device(s) includes the claimed element "a connection to an energy source, a switch, a coil, an energy storage device, at least one blower and a casing." As can be seen in the following screenshot taken from a distributor's website[2], the device features a power cord on the back side, which is presumed to be connected to a power source as required in order to power the "HICMMT (high intensity concentrated magnetic muscle training) technology" and "synchronized RF." https://rejuvafresh.com/products/emshape-neo-machine-

---

[2] Defendants indicated in their correspondence to Plaintiff, dated May 22, 2025, Defendants purchased the Accused Device(s) through a distributor—Rejuva Fresh. **Exhibit F at 6** ("The EMSHAPE device referenced in [Plaintiff's] letter was purchased in good faith through Rejuva Fresh.").

professional-5-in-

1?variant=44317652484314&gad_source=1&gad_campaignid=21385306694&gclid=CjwKCAj

wg7PDBhBxEiwAf1CVu55goObFp5R9A_upgoQloJU7kQlzoq1U6Acgg82M-

sEOb1mkDhuZ8RoCBV0QAvD_BwE ("**Distributor's Landing Page**"). The Distributor's

Landing Page further describes the device as having "66% more power." Additionally, the device

features a casing—the exterior of the device which houses the internal mechanisms—and the holes

around the circumference of the applicator indicate the presence of at least one blower as the holes

allow the air to circulate. On information and belief, a reasonable opportunity for further

investigation or discovery will show that the device also features a coil, an energy storage device,

and a switch.







- 66% more power
- 57% stronger energy, using the latest HICMMT (high intensity concentrated magnetic muscle training) technology

- Latest HICMMT technology + synchronized RF delivers efficient & effective muscle building + fat reduction.
- No downtime, 100% non-invasive, safe and painless.
- User friendly working system, allowing you to create customized treatments for clients with different amounts of fat.
- Use multiple handles at the same time, significantly reducing the time spent on treatments.
- 4 handles be used at the same time, and the intensity of the flat and curved body handles is separately controllable, allowing for better treatment customization.
- High power, fast frequency up to 200Hz and stronger magnetic energy compared to other brands.
- One 30 minute treatment session is equivalent to more than 24,000 repetitions of muscle exercises, giving you a quick and powerful way to build and shape your muscles.

(Distributor's Landing Page; accessed July 8, 2025)



([https://bodysculptinglayton.com/](https://bodysculptinglayton.com/); accessed July 8, 2025)

59.     On information and belief, the Accused Device(s) includes the claimed element "with the blower arranged on a circumference of the coil." On information and belief, a reasonable opportunity for further investigation or discovery will show that the device includes a blower arranged on a circumference of a coil.

60.     On information and belief, the Accused Device(s) includes the claimed element "wherein the coil and the casing are arranged in a manner that fluid can flow in-between them and wherein the coil is cooled by fluid flow over at least upper and lower sides of the coil." As described above, the holes around the circumference of the device indicate that a fluid (e.g., air) is being used to cool coils, which on information and belief, reside within the casing. On information and belief, a reasonable opportunity for further investigation or discovery will show that the device includes a coil(s) arranged in a manner that fluid (e.g., air) can flow in-between the coil(s), which are cooled by the fluid flow over at least the upper and lower sides of the coil(s).





(Distributor's Landing Page; accessed July 8, 2025)

61.     Defendants' direct infringement of the '519 Patent has been, and continues to be, willful. On information and belief, Defendants have been aware of the '519 Patent before the filing of this Complaint and have infringed the '519 Patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

62.     Defendants' direct infringement of the '519 Patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

63.     BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '519 Patent.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 10,478,634

64.     BTL repeats and re-alleges each and every allegation above as if fully set forth herein.

65.     The '634 Patent is directed towards a method for toning muscles in a patient using time-varying magnetic fields. Exemplary claim 1 of the '634 Patent recites:

A method for toning muscles in a patient using time-varying magnetic fields, the method comprising:

placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock;

coupling the first applicator to the patient with an adjustable flexible belt so that the belt holds the first applicator to the patient's skin or clothing;

providing energy to the magnetic field generating coil in order to generate a time-varying magnetic field; and

applying a magnetic fluence of 50 T cm$^2$ to 1,500 T cm$^2$ to the body region,

wherein the time-varying magnetic field is applied to the body region with a magnetic flux density sufficient to cause a muscle contraction in the body region.

66. Defendants have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, at least claim 1 of the '634 Patent by making, using, offering to sell, selling, or importing the Accused Device(s) in the United States.

67. Defendants have and continue to promote and perform the preamble of claim 1 of the '634 Patent, which recites "[a] method for toning muscles in a patient using time-varying magnetic fields." Advertising and promotional information for the Accused Device(s) indicates that the body-contouring services performed by the Accused Device(s) tone a patient's muscles using time-varying magnetic fields. For example, in the below screenshot taken from Defendants' Website, the Accused Device(s) delivers "High-Intensity Muscle Toning" to "Sculpt Your Dream Abs." Furthermore, the device "targets fat and enhances muscle definition" by utilizing "20,000 contractions per session."







([https://bodysculptinglayton.com/](https://bodysculptinglayton.com/); accessed July 8, 2025)

The Distributor's Landing Page further describes the device as "emit[ing] synchronized magnetic and radio frequency waves to achieve remarkable fat reduction and muscle growth results." Additionally, the device uses "the latest HICMMT (high intensity concentrated magnetic muscle training) technology."

- 66% more power
- 57% stronger energy, using the latest HICMMT (high intensity concentrated magnetic muscle training) technology

**How EMShape® Technology Works to Build Muscle & Burn Fat:**

- The EMShape® handle emits synchronized magnetic and radio frequency waves to achieve remarkable fat reduction and muscle growth results.
- HICMMT uses high intensity concentrated electromagnetic waves to stimulate and train the targeted muscle tissue.
- During a 30 minute treatment session, the strong magnetic waves penetrate up to 8cm of muscle tissue, forcing the muscles to contract involuntarily thousands of times. Such supra-maximal contractions are not achievable by normal exercise.
- The body naturally responds to this supra-maximal exercise by rebuilding muscle tissue, making the body more toned and stronger.
- As with normal exercise there is a large amount of natural fat decomposition, resulting in body slimming.
- Sychronized RF energy is applied to more quickly damage fat cells, triggering faster natural elimination of fat from the body.

(Distributor's Landing Page; accessed July 8, 2025)

68.     Defendants have and continue to promote and perform the claimed step of "placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock." For example, Defendants' website shows the Accused Device(s) includes at least one applicator, which on information and belief, comprises a magnetic field generating coil. As shown on Defendants' website, Defendants can place these applicators on the skin of a patient's abdomen or buttocks or over clothing covering these body regions.

## WHO IS A CANDIDATE FOR BODY SCULPTING?



- **BMI UP TO 35**

This treatment is effective for patients with a BMI of up to 35, making it suitable for a wider range of individuals.

- **FAT LOSS, MUSCLE TONE & TIGHTER SKIN**

It targets fat and enhances muscle definition, even helping lean patients achieve six-pack abs.

- **AFFORDABLE ALTERNATIVE TO EMSCULPT NEO**

EmShape NEO offers comparable or better results at a lower cost than the pricey EMSCULPT NEO.

- **NO RECOVERY TIME**

Quick, comfortable sessions with no downtime—patients can resume normal activities immediately.

- **MAINTENANCE WITH HEALTHY LIFESTYLE**

Results are best maintained with a healthy lifestyle; a 30-minute maintenance session every 1-6 months is recommended.

- **CONTRAINDICATIONS**

Not suitable for those with metal implants, tattoos at the treatment site, certain medical conditions, or during pregnancy.



([https://bodysculptinglayton.com/](https://bodysculptinglayton.com/); accessed July 8, 2025)

The Distributor's Landing Page depicts the device's applicators attached to the skin of patients at various body regions including the abdomen or buttock. On information and belief, a reasonable opportunity for further investigation or discovery will show that the device's applicators contain magnetic field generating coils.







(Distributor's Landing Page; accessed July 8, 2025)

69.     Defendants have and continue to promote and perform the claimed step of "coupling the first applicator to the patient with an adjustable flexible belt so that the belt holds the first applicator to the patient's skin or clothing." As shown on the Distributor's Landing Page, the device's applicators are attached to the skin of patients using an adjustable flexible belt at various body regions including "abdomen, buttock, arms, and thighs."







(Distributor's Landing Page; accessed July 8, 2025)

70.     Defendants have and continue to promote and perform the claimed step of "providing energy to the magnetic field generating coil in order to generate a time-varying

magnetic field." On information and belief, a reasonable opportunity for further investigation and discovery will show that the method of operation of the Accused Device(s) includes providing a power supply which transmits energy to the applicators, via an energy source and energy storage device, which in turn generates time-varying magnetic fields. On information and belief, the Accused Device(s) includes a power supply which transmits energy to the applicators, which in turn generate time-varying magnetic fields.

71.     Defendants have and continue to promote and perform the claimed step of "applying a magnetic fluence of 50 T $cm^2$ to 1,500 T $cm^2$ to the body region." On information and belief, a reasonable opportunity for further investigation or discovery will show that the Accused Device(s) magnetic field generating coils are configured to generate a time-varying magnetic field with a magnetic flux density in a range of 0.1 Tesla to 7 Tesla on a surface of the magnetic field generating coils and are of an area sufficient to result in a magnetic fluence in the range of 50 T $cm^2$ to 1,500 T $cm^2$.

72.     Defendants have and continue to promote and perform the claimed step "wherein the time-varying magnetic field is applied to the body region with a magnetic flux density sufficient to cause a muscle contraction in the body region." For example, advertising and promotional materials for the Accused Device(s) promote and advertise the device's ability to induce "20,000 contractions per session." These contractions cause "Targeted Fat Reduction" as a result of "HICMMT deliver[ing] 60% stronger magnetic energy than HIFEM, enhancing muscle contractions and sculpting efficiency."



([https://bodysculptinglayton.com/](https://bodysculptinglayton.com/); accessed July 8, 2025)

73.     Defendants have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, at least claim 1 of the '634 Patent by making, using, offering to sell, or importing at least the Accused Device(s) in the United States. On information and belief, Defendants were aware of the '634 Patent since before the filing of this Complaint. On information and belief, Defendants have known that the Accused Device(s) is designed for a use that infringes one or more claims of the '634 Patent, and the Accused Device(s) lacks a substantial non-infringing use. On information and belief, Defendants have, and will continue to, intentionally directly infringe with knowledge of the '634 Patent and knowledge that their acts are directly infringing.

74.     Defendants' direct infringement of the '634 Patent has been, and continues to be, willful. On information and belief, Defendants have been aware of the '634 Patent before the filing of this Complaint and have infringed the '634 Patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

75.     Defendants' direct infringement of the '634 Patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

76.     BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '634 Patent.

## COUNT III: TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

77.     BTL repeats and re-alleges each and every allegation above as if fully set forth herein.

78.     BTL owns exclusive rights to the BTL Trademarks in the United States. The United States trademark registrations for the BTL Trademarks are in full force and effect.

79.     Defendants, without BTL's permission or consent, have used and continue to use the BTL Trademarks and confusingly similar variations thereof in connection with the advertising, promotion, sale, and offer for sale of the Accused Device(s).

80.     On information and belief, Defendants' unauthorized use of the HIFEM® mark to advertise and promote body-contouring services using the Accused Device(s) has caused and is likely to cause confusion, mistake, and deception among the public as to the origin and quality of the Accused Device(s) and services; their affiliation, connection, or association with BTL; and the sponsorship or approval by BTL of the Accused Device(s) and body-contouring services.

81.     On information and belief, Defendants' unauthorized use of the "EMShape" and "EMShape NEO"—which are confusingly similar variations of BTL's EMSCULPT®, EMSCULPT NEO®, NEO®, and EM® federally registered trademarks—to advertise and promote the Accused Device(s) has caused and is likely to cause confusion, mistake, and deception among

the public as to the origin and quality of the Accused Device(s) and services; their affiliation, connection, or association with BTL; and the sponsorship or approval by BTL of the Accused Device(s) and body-contouring services.

82.     Defendants have had knowledge of BTL's rights in the BTL Trademarks since before the filing of this Complaint. Under 15 U.S.C. § 1072, Defendants have had constructive knowledge of BTL's rights in each of the EMSCULPT® trademarks since at least the dates the registration for each of these trademarks first issued to BTL. Under 15 U.S.C. § 1072, Defendants have had constructive knowledge of BTL's rights in each of the EM® trademarks since at least the dates the registration for each of these trademarks first issued to BTL. Under 15 U.S.C. § 1072, Defendants have had constructive knowledge of BTL's rights in the BTL Logo since at least the date the registration for this trademark first issued to BTL. Under 15 U.S.C. § 1072, Defendants have had constructive knowledge of BTL's rights in the HIFEM® trademark since at least March 5, 2019—the date the registration for the HIFEM® trademark first issued to BTL. Moreover, a straightforward Google search for "BTL" and "trademarks" lists the BTL Trademarks as associated with BTL. https://www.trademarkia.com/owners/btl-industries-inc.

83.     The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

84.     Defendants' trademark infringement has damaged, and continues to damage, BTL in an amount yet to be determined, but of at least the profits that Defendants have made as a result of their infringement, plus the cost of this action. Defendants' trademark infringement is the direct and proximate cause of BTL's damages.

85.     BTL is entitled to an injunction restraining Defendants, their officers, agents, and employees, and all persons acting in concert with Defendants, from engaging in any further such acts in violation of federal trademark law.

### COUNT IV: FEDERAL UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND FALSE ADVERTISING UNDER 15 U.S.C. § 1125

86.     BTL repeats and re-alleges each and every allegation above as if fully set forth herein.

87.     Defendants' unauthorized, intentional, and willful use of the BTL Trademarks and confusingly similar variations thereof to promote, market, offer for sale, and sell the Accused Device(s) has and is likely to confuse, mislead, or deceive as to the origin and quality of these body-contouring services and the Accused Device(s), their association with BTL and BTL's EMSCULPT® and EMSCULPT NEO® devices, and the sponsorship or approval by BTL of the Accused Device(s).

88.     Defendants' unauthorized, intentional, and willful use of the BTL Trademarks and confusingly similar variations thereof to promote, market, offer for sale, and sell the Accused Device(s) misrepresents the nature, characteristics, qualities, and geographic origin of the Accused Device(s).

89.     Defendants' actions constitute a willful violation of 15 U.S.C. § 1125.

90.     Defendants' actions described above have injured and, if permitted to continue, will continue to harm BTL's business and the goodwill associated with its brand, as well as BTL's reputation for providing high-quality and safe body-contouring aesthetic devices and procedures subject to strict quality control standards that have been cleared by the FDA.

91.     BTL has no adequate remedy at law, and if Defendants' actions are not enjoined, BTL will continue to suffer irreparable harm to its reputation and the goodwill of the BTL brand.

### COUNT V: FEDERAL TRADEMARK COUNTERFEITING UNDER 15 U.S.C. § 1114

92.     BTL repeats and re-alleges each and every allegation above as if fully set forth herein.

93.     Defendants use marks identical to BTL's NEO® and EM® federally registered trademarks.

94.     BTL has not authorized Defendants' use of the BTL Trademark to advertise and promote body-contouring services using the Accused Device(s).

95.     Defendants' unauthorized use of the BTL Trademark is likely to (a) cause the public and consumers to believe that Defendants' body-contouring services using the Accused Device(s) are authorized by and/or affiliated with BTL; and (b) result in Defendants unfairly benefitting from the reputation of BTL and the BTL Trademark to the substantial and irreparable injury of consumers, BTL, the BTL Trademarks, and the substantial goodwill represented thereby.

96.     Defendants' acts as set forth herein constitute trademark counterfeiting in violation of 15 U.S.C. § 1117(b)(1) and reflect Defendants' intent to exploit the goodwill and strong brand recognition associated with the BTL Trademark.

### COUNT VI: VIOLATION OF THE UTAH UNFAIR COMPETITION ACT, UTAH CODE ANN. § 13-5(A)-101, *et seq.*

97.     BTL repeats and re-alleges each and every allegation above as if fully set forth herein.

98.     The acts of Defendants complained of herein constitute deceptive and unfair trade practices in violation of Utah Unfair Competition Act, Utah Code Ann. § 13-5(a)-103.

99.     Defendants' unauthorized, intentional, and willful use of the BTL Trademarks to promote, market, offer for sale, and use of the Accused Device(s) constitutes deceptive and unfair trade practices in violation of Utah Code Ann. § 13-5(a)-103.

100.    Defendants' unauthorized, intentional, and willful representations are false and misleading and were done to deceive the consuming public in Utah and to capitalize on the goodwill developed by BTL.

101.    Defendants' use of the BTL Trademarks in connection with the marketing and sale of the Accused Device(s) constitutes unfair competition that is likely to cause confusion, mistake, and deception among consumers as to the affiliation, connection, or association with BTL or the origin, sponsorship, or approval of the Accused Device(s) by BTL. Defendants' deceptive actions are likely to influence the consuming public's purchasing decisions. Defendants' unfair competition jeopardizes the goodwill created by BTL in its EMSCULPT®, EMSCULPT NEO®, HIFEM®, NEO®, and EM® trademarks.

102.    Despite their actual and constructive knowledge of BTL's use and rights in the BTL Trademarks, Defendants have continued to use the BTL Trademarks (and variations thereof) in association with the promotion, advertising, marketing, and/or sale of the Accused Device(s) without BTL's authorization or consent. Defendants' actions are deliberate and willful and have been done with the intention of trading upon the valuable goodwill created by BTL in the BTL Trademarks.

103.    BTL has sustained injury, damage, and loss in Utah based on Defendants' actions. Defendants' actions directly or indirectly affect Utah.

104.    Defendants are liable for a violation of Utah Code Ann. § 13-5(a)-103.

105.    As a direct result of Defendants' deceptive acts and practices, BTL is entitled to recover actual damages, punitive damages, attorneys' fees, and costs pursuant to Utah Code Ann. § 13-5(a)-103(1)(b)(i)-(iii).

## COUNT VII: COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

106.    BTL repeats and re-alleges each and every allegation above as if fully set forth herein.

107.    This claim arises under the common law of the State of Utah.

108.    Defendants have engaged in unfair competition through their reliance and exploitation of consumer mistake and confusion, and their deliberate efforts to exploit the goodwill represented by the BTL Trademarks in connection with the marketing and sale of the Accused Device.

109.    Defendants' aforementioned acts constitute trademark infringement and unfair competition in violation of Utah common law.

110.    As a proximate result of Defendants' actions, BTL has suffered and will continue to suffer damages.

111.    BTL has no adequate remedy at law and will continue to suffer irreparable harm unless Defendants are enjoined.

112.    By reason of Defendants' unlawful conduct as alleged above, BTL has been substantially injured and is entitled to damages and Defendants' profits attributable to their infringement, which are presently indeterminate, and the costs of this action.

## PRAYER FOR RELIEF

WHEREFORE BTL requests entry of judgment against Defendants as follows:

A.       A judgment that Defendants have infringed one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(a)–(c);

B.       An award of damages not less than $125,000 for infringement of the Asserted Patents, with said damages to be trebled because of the intentional and willful nature of Defendants' infringement, as provided by 35 U.S.C. § 284;

C.       A judgment that Defendants have willfully infringed one or more claims of the Asserted Patents;

D.       A determination that this case is "exceptional" under 35 U.S.C. § 285 and an award of BTL's reasonable attorneys' fees;

E.       An order permanently enjoining Defendants, their officers, directors, employees, agents, and all persons acting in concert with them, from infringing the Asserted Patents;

F.       A judgment that Defendants have violated the Lanham Act, 15 U.S.C. § 1114, by committing acts of trademark infringement;

G.       A judgment that Defendants' use of the "HIFEM" mark, as alleged in this Complaint, infringes BTL's HIFEM® trademark;

H.       A judgment that Defendants' use of the "EMShape" mark, as alleged in this Complaint, infringes BTL's EMSCULPT® trademark;

I.       A judgment that Defendants' use of the "EMShape NEO" mark, as alleged in this Complaint, infringes BTL's EMSCULPT NEO® trademark;

J.       A judgment that Defendants have violated the Lanham Act, 15 U.S.C. § 1125(a),

by committing acts of federal unfair competition, false designation of origin, and false advertising;

K.    A judgment that Defendants have violated the Utah Code Ann. § 13-5(a)-103;

L.    A judgment that Defendants have violated Utah common law;

M.    An award of damages for Defendants' infringement of the BTL Trademarks, including Defendants' profits, any damages sustained by BTL, and the costs of the action as provided by 15 U.S.C. § 1117(a), with said damages to be trebled because of the intentional and willful nature of Defendants' infringement, as provided by 15 U.S.C. § 1117(b);

N.    A judgment that this case is "exceptional" under 15 U.S.C. § 1117(a) and an award of reasonable attorneys' fees;

O.    A judgment that Defendants' conduct in violating the BTL Trademarks is willful and malicious;

P.    Alternatively, an award of statutory damages for Defendants' infringement of the BTL NEO® and NEO® trademarks in an amount of $200,000 per counterfeit mark. That amount to be heightened to $2,000,000 per counterfeit mark in accordance with 15 U.S.C. § 1117(c)(2) for Defendants' willfulness;

Q.    An award of damages against Defendants as a result of their wrongful acts against BTL in an amount to be proved at trial;

R.    An award of any and all of Defendants' profits arising from the foregoing acts;

S.    An award of pre-and post-judgment interest of any monetary damages at the highest rate allowed by law;

T.    Permanent injunctive relief enjoining Defendants from:

     i.    using the BTL Trademarks or any reproductions, copies, or colorable imitations

thereof, in any manner in connection with the promotion, marketing, advertising, offering for sale, or sale of any good or service that is not a good or service offered by a genuine BTL product, or is not authorized by BTL to be offered in connection with the BTL Trademarks;

ii.     passing off, inducing, or enabling others to sell or pass off any good or service as a good or service offered by a genuine BTL product, or any other good or service offered by BTL, that is not BTL's or not offered under the authorization, control, or supervision of BTL and approved by BTL for sale under the BTL Trademarks;

iii.    committing any acts calculated to cause consumers to believe that Defendants' goods or services are those sold under the authorization, control or supervision of BTL, or are sponsored by, approved by, or otherwise connected with BTL; and

iv.     further infringing the BTL Trademarks and damaging BTL's goodwill.

U.     An award of BTL's costs and expenses in this action; and

V.     For such other relief as the Court may deem just and proper.

## **JURY DEMAND**

BTL hereby demands a trial by jury on all issues so triable.

Respectfully submitted, this 28th day of July, 2025.

/s/ Caleb Hatch

Caleb Hatch, Utah State Bar No. 17016
**LEE & HAYES, P.C.**
601 West Riverside Avenue, Suite 1400
Spokane, WA 99201
Telephone: (509) 324-9256
Facsimile: (509) 323-8979
Caleb.Hatch@leehayes.com

Richard Uberto (*pro hac vice* to be filed)
**LEE & HAYES, P.C.**
75 14th Street NE, Suite 2500
Atlanta, GA 30309
Telephone: (404) 815-1900
Richard.Uberto@leehayes.com

Seth R. Ogden (*pro hac vice* to be filed)
**PATTERSON INTELLECTUAL**
    **PROPERTY LAW, P.C.**
1600 Division Street, Suite 500
Nashville, TN 37203
Telephone: (615) 242-2400
Facsimile: (615) 242-2221
sro@iplawgroup.com

*Attorneys for Plaintiff BTL Industries, Inc.*